THIGPEN, Judge.
This case involves the validity of a judgment lien after a bankruptcy.
In July 1994, William W. Blevins and Billie Jean Blevins filed a complaint for a declaratory judgment against R.D. Hicks and John Deere Company seeking, inter alia, a determination of the validity of John Deere’s judgment lien against a parcel of their property. Thereafter, Hicks filed a third-party complaint against Jerry Don Houser and Sandra B. Houser (Housers) and Marion Trust and Banking Company of South Pittsburg, Tennessee (Marion Trust). Following motions for summary judgment by the Blevinses, the Housers, and Hicks, the trial court entered a summary judgment in favor of the Housers. John Deere appeals.
The record reveals the following pertinent facts: In December 1982, the Housers executed a mortgage in favor of First National Bank of Stevenson (First National) on real property (Parcel 1) in Jackson County, Alabama, and the mortgage was duly recorded. Three years later, in December 1985, John Deere obtained a judgment for $10,657.50 against Jerry Don Houser, and pursuant to Ala.Code 1975, § 6-9-210, the certificate of judgment was recorded. This judgment resulted from a claim by John Deere against Jerry Don for a deficiency owed following the repossession and sale of certain equipment Jerry Don had purchased from and financed with John Deere.
In March 1986, the Housers petitioned for an order of relief in the United States Bankruptcy Court for the Northern District of Alabama. Approximately five months later, First National foreclosed its mortgage on Parcel 1 and recorded the foreclosure deed. *1082 The Housers allege that they received a discharge of their debts in bankruptcy on September 10, 1987. Subsequently, First National deeded Parcel 1 to Paul and Linda Hutcherson. On December 10, 1987, the Hutchersons conveyed the property to E.J. Houser and Letha Kate Houser, the father and mother of Jerry Don. On the same date, E.J. and Letha conveyed a portion of this real property (Parcel 2) to the Housers, thereby placing the Housers again in possession of a portion of the property that had previously been foreclosed by First National. It is this portion of the property, Parcel 2, that is the subject of controversy and to which the Blevinses currently have title. In February 1991, the Housers conveyed Parcel 2 to Hicks, who, in August 1991, conveyed the property to the Blevinses. Thereafter, in July 1994, the Blevinses filed a complaint for a declaratory judgment against Hicks and John Deere. Hicks then filed a third-party complaint against the Housers and Marion Trust, requesting a determination of his interest in the subject property before he transferred the property to the Blevinses. All parties filed motions for summary judgment. Further, the trial court stated that its “finding dispose[d] of all issues pending before the court ... including all motions for summary judgment and declaratory judgment.” It is noteworthy that while these motions were pending, the trial court had entered an order requiring Hicks to post a bond sufficient to satisfy the amount of the principal and interest of John Deere’s lien. Further, the court stated that the purpose of the bond was to permit the sale of the Blev-inses’ property and to provide security to John Deere if the court determined a valid lien attached to the Blevinses’ property.
John Deere raises two issues on appeal: 1) whether the trial court erred in entering the summary judgments, holding that the judgment lien did not attach to the subject property; and 2) whether John Deere’s judgment lien survived the bankruptcy proceedings of the Housers and attached to the property.
John Deere contends that summary judgment was inappropriate because, it says, the movants relied on mere general assertions to support their motion for a summary judgment. Specifically, John Deere contends that there are genuine issues of material fact regarding: 1) the validity of its lien against all other property, including the instant property, in which the Housers have an interest; 2) the determination of the case as a “no asset” case; 3) the statutory requirement to give notice of the bankruptcy to John Deere as a secured creditor; and 4) the contentions of the Housers that their alleged discharge and the foreclosure of their property, Parcel 1, is determinative of the existence or validity of John Deere’s lien.
The law regarding a summary judgment is well established. A summary judgment is proper when the trial court determines that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Rule 56, A.R.Civ. P.; Melton v. Perry County Board of Education, 562 So.2d 1341 (Ala.Civ.App.1990). The burden of negating the existence of a material fact is on the party moving for summary judgment. Rule 56, A.R.Civ.P. On appeal, the record must be viewed in a light most favorable to the nonmoving party. Mann v. City of Tallassee, 510 So.2d 222 (Ala.1987). A nonmovant must present substantial evidence to overcome a motion for summary judgment that is made and supported as required. Substantial evidence is defined as “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). The nonmoving party may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing by substantial evidence that there is a genuine issue for trial. Rule 56, A.R.Civ.P.; Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794 (Ala.1989).
The trial court entered the following order, in pertinent part:
“The land of the debtors was removed from any attachment or execution process upon the properly conducted foreclosure procedure by the bank and the subsequent failure of the mortgagor (Housers) to execute his right of redemption. This right *1083 had expired on 2 September, 1987 so that when the Housers’ discharge was granted eight days later, there was no property in the Housers’ estate. It is the opinion of this Court that John Deere’s in rem rights in the subject matter property no longer existed after the expiration of the debtors’ right to redeem his land so that John Deere’s judgment, being only a personal debt like all the others in this no asset bankruptcy action ease, was discharged under the [Matter of Baitcher, 781 F.2d 1529 (11th Cir.1986)] Rule cited hereinabove.
“John Deere cites the case of In re: Wrenn, 40 F.3d 1162, 1164 (11th Cir.1994), which stands for the proposition that ‘a debt discharged in bankruptcy secured by a valid judgment lien, merely serves to discharge the debtor’s liability for that debt; but does not remove or vacate the hen from the debtor’s property. The discharge does not subordinate or vacate the judgment hen unless the debtor takes action as prescribed by the United States Bankruptcy Code to avoid the hen.’ This ease presupposes that the debtor has ‘property1 following a bankruptcy discharge upon which a hen could attach. This Court is persuaded by the following argument of counsel for the debtor:
“ ‘The instant case is distinguishable from the Wrenn case in that the judgment hen of John Deere was not attached to any property when the John Deere debt was discharged by the Hous-ers’ bankruptcy because of the previous foreclosure of First National Bank. With no property to attach to at the time of the Housers’ discharge, John Deere’s judgment was unsecured, and its hen could not later attach to newly acquired property.’
“Accordingly, this Court finds that the claim of the John Deere Company based on its judgment against Jerry Don and Sandra Houser was discharged by action of the bankruptcy court effective 10 September, 1987 and could not, as a matter of law, constitute a subsequent cloud on property after acquired by the Housers. It is the ORDER of this court that the motion for summary judgment of Jerry Don Houser and Sandra B. Houser be, and hereby is, granted.
“It is further the ORDER of this court that Jerry Don Houser and Sandra B. Houser, and their predecessors in title, took title to the subject matter property herein free and clear of any claim of the John Deere Company.
“It is the opinion of this Court that this finding disposes of all issues pending before this Court in this matter including all motions for summary judgment and declaratory judgment.”
The creation and attachment of a judgment lien is statutory in nature. Ala. Code 1975, § 6-9-211, provides that every certificate of judgment which has been properly recorded shall be a lien on all property of the defendant in the county where filed, and that the lien shall continue for 10 years after the date of the judgment. Our Supreme Court has stated that “the recording of a certificate of judgment creates a blanket hen on all of the property of the defendant that is located in the county of recordation and is subject to levy and sale.” Smith v. Arrow Transportation Co., 571 So.2d 1003, 1006 (Ala.1990). Recording the judgment provides notice to ah persons of the existence of the hen. Ala.Code 1975, § 6-9-211. “ ‘The judgment creditor’s rights in the property attach upon the act of recording the certificate of judgment and have priority over all rights arising out of subsequently recorded instruments.’ ” Smith at 1006; see Garrett v. Garrett, 628 So.2d 659, 660 (Ala.Civ.App.1993). Moreover, the hen attaches although the debt which resulted in the judgment was contracted prior to the acquisition of the particular property by the judgment debtor. Aetna Auto Finance, Inc. v. Kirby, 240 Ala. 228, 198 So. 356 (1940).
Apparently, none of the transferors or transferees prior to the Blevinses discovered the outstanding encumbrances on the property and the Blevinses were unaware of the recorded judgment hen until they had prospective purchasers for the property. A title search prepared in anticipation of the sales transaction revealed the recorded hen.
The facts surrounding the Housers’ bankruptcy petition and proceedings are central *1084 to the issue of whether John Deere’s judgment lien attached to the subject property.
The Housers filed a Chapter 7 bankruptcy petition on March 28, 1986. John Deere contends that the Housers did not list it as a secured creditor on the petition, and that they did not provide John Deere notice of the filing of the bankruptcy petition. In addition, John Deere asserts that as a result of not receiving notice of the bankruptcy proceedings, it was denied the opportunity to assure protection of its secured claim from the discharge that the debtors might receive. The Housers, as debtors, were obligated to, among other things, “file a list of creditors, and unless the court orders otherwise, a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor’s financial affairs.” 11 U.S.C. § 521(1), and Fed. R. Bankr.P. 1007.
Incident to filing a bankruptcy petition, a debtor is required to file a matrix, or list, of creditors with the bankruptcy court. This matrix allows the bankruptcy court or the debtor to provide notice by mail to all creditors. The requirement to give notice to creditors and the exceptions to a discharge of debts in bankruptcy include:
“(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
[[Image here]]
“(3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—
“(A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or
“(B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of discharge-ability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the ease in time for such timely filing and request.”
11 U.S.C. § 523.
Jerry Don states in his affidavit supporting his motion for summary judgment that John Deere had adequate notice of the bankruptcy petition in 1986. John Deere, on the other hand, submitted an affidavit stating that at no time did it receive actual or constructive notice of the bankruptcy filing by the Hous-ers. Further, the trial court stated in its order that “it is agreed the petition filed by the Housers did not list John Deere as a creditor.” The Housers specifically argue that any failure on their part in not listing John Deere as a creditor is immaterial because, they say, at the time they received a discharge, the. debt became an unsecured debt, and, consequently, there was no property to which the lien would attach. The Housers argue that in “no asset” eases, a debtor will not be denied a discharge who has failed to list a creditor for reasons of honest mistake, not fraud or intentional design, citing Matter of Baitcher, 781 F.2d 1529 (11th Cir.1986). The Housers presented no evidence that their case was a “no asset” case, nor did they present evidence that at the time of filing there was no property to which the lien could attach.
Our Supreme Court addressed the issue of notice and dischargeability of a debt in bankruptcy in Isbell v. Alabama Power Co., 477 So.2d 281 (Ala.1985). There, the debtors were two months in arrears on a utility Ml when they filed a Chapter 7 petition in bankruptcy. They listed Alabama Power Company (APCo) as a creditor on the petition; however, APCo’s address was incorrectly listed. Subsequently, the Isbells received a discharge in bankruptcy. Approximately two years later, they applied to APCo for electrical service and began to receive notices for payment of the arrearage due from the previous account. The Supreme Court affirmed the trial court’s summary judgment for APCo, noting that “the burden of proving ‘notice or actual knowledge’ of the creditor is upon the bankrupt.” Isbell, 477 So.2d at 283. It further stated:
“[A] creditor who is not ‘duly scheduled’ with a correct address on a bankruptcy *1085 petition is excepted from the operation of a discharge, unless the creditor had notice or actual knowledge of the proceedings in bankruptcy in time for filing a proof of claim and allowance. Mere constructive notice or imputed knowledge of the bankruptcy proceeding is not sufficient, as a matter of law, to create a discharge.”
Isbell, 477 So.2d at 283.
The Isbells, like the Housers in the instant case, did not present evidence to support their contention that the creditor had received notice of their bankruptcy. Consequently, the Supreme Court found that the Isbells had failed to present evidence to refute APCo’s assertion. In the instant case, however, the Housers should have presented substantial evidence that John Deere received notice, by providing a copy of their bankruptcy petition or a copy of the mailing list of the creditors. The record contains an exhibit John Deere attached to its response to the Housers’ motion for summary judgment, which contains the purported schedules from the Housers’ petition; those schedules indicate that John Deere was not listed as a creditor. The trial court concluded that the lack of notice was not fatal to the discharge of the Housers’ debt. The trial court stated:
“Matter of Baitcher, 781 F.2d 1529 (11th Cir.1986), ... stands for the proposition that unless a judgment creditor is wrongfully omitted from a Chapter 7 bankruptcy petition through fraud or other wrongdoing, the debtor can obtain, notwithstanding such failure to list and subsequent failure by the creditor to have notice of the bankruptcy action, a discharge of said unlisted creditor’s debt in a no asset case.”
The court in Baitcher vacated a summary judgment and remanded the case so that the lower court could determine if the lack of notice to the creditor was based on fraud or intentional design, and it further stated, “We cannot and do not make findings of fact, but do say it is the function of the trial court to do so, and without findings as to fraud or intentional design, no per se rule can be applied in Baiteher’s favor.... We add the view that no per se rule can be applied in Samuel’s [the creditor] favor either.” Baitcher, 781 F.2d at 1534. (Emphasis in original.)
Moreover, John Deere contends that, even if the Housers had provided sufficient notice of the bankruptcy, its judgment lien would still have survived any discharge obtained by the Housers pursuant to 11 U.S.C. § 727, and would have attached to Parcel 2, because, it says, the Housers did not avail themselves of the applicable bankruptcy statutes and rules for the avoidance of liens. See 11 U.S.C. §§ 506(d), 522(f)(1). A judgment hen is voidable, but not void. 11 U.S.C. § 544. The Housers were required to take certain actions regarding the avoidance of the hen. 11 U.S.C. § 522(f)(1).
The court in In re Breaux, 55 B.R. 613, 614 (Bankr.M.D.Ala.1985), stated:
“Section 522(f)(1) allows the debtor to avoid a judicial hen but only to the extent that such hen impairs an exemption to which the debtor would otherwise be entitled. Thus, the judicial hen may not be avoided to the extent that it reaches nonexempt property of the estate or property acquired by the debtor after bankruptcy.”
By virtue of the perfection of the judgment hen, John Deere’s hen was a secured debt. Pursuant to 11 U.S.C. § 506(d) and Fed.Bankr.R.P. 7003, the debtors could have instituted an “adversary” proceeding in the bankruptcy court that would have properly challenged the secured status of John Deere’s hen under the apphcable federal bankruptcy laws. This proceeding would have afforded John Deere an opportunity to htigate the extent of its judgment hen and to determine the extent, if any, to which the hen could be avoided by the Housers and/or discharged. While we recognize that the purpose of a discharge in bankruptcy pursuant to 11 U.S.C. § 727 is to provide the debtors with an opportunity for a “fresh start” and to reheve them of the personal obhgation to pay the debt, state property laws should not be violated in that process.
The decision of the court in In re Wrenn, 40 F.3d 1162 (11th Cir.1994), relying on 11 U.S.C. § 524(a)(1), was that the judgment was void to the extent that the judgment was the personal liability of the debtor. *1086 That discharge, however, does not affect liability in rem, and pre-petition liens may remain enforceable after discharge. In re Wrenn, 40 F.3d 1162 (11th Cir.1994).
It is undisputed that John Deere had a valid, enforceable hen as to Parcel 1, which was owned by the Housers and which was mortgaged to First National. The Housers argue, however, that the judgment hen was extinguished by First National’s foreclosure of Parcel 1, because the bank was the senior henor. Further, the Housers argue that the foreclosure of their property by First National caused John Deere’s hen to become an unsecured debt, and like other unsecured debts, it was discharged in the bankruptcy proceeding. Accordingly, they argue that following the foreclosure of the property, the only remaining interest of John Deere in the property was a statutory right of redemption, available also to the Housers, and that, when neither party redeemed the property, the hen was extinguished. Their argument is based upon Bailey Mortgage Co. v. Gobble-Fite Lumber Co., 565 So.2d 138 (Ala.1990). In that case, the court stated:
“If foreclosure of a valid mortgage is properly conducted, all interests arising after the time the senior mortgage was created and ah subordinate interests will be cut off unless the junior lienors redeem during the specified time period provided by statute.
[[Image here]]
“If there are no surplus proceeds, the only remedy or recourse available to a junior encumbrancer is the right to redeem.”
Bailey Mortgage Co., 565 So.2d at 144. (Citations omitted.)
Bailey Mortgage Co. is distinguishable from the instant case. It involved parties in the building and construction business. The purpose of the statute concerning a mechanic’s or a materialman’s hen was to protect the interest of those who, by labor and materials, had increased the value of the subject property. We are unaware of any authority by which a materialman’s hen attaches to any other property, unlike that of a judgment lien. Peavy Lumber Co. v. Murchison, 272 Ala. 251, 130 So.2d 338 (1961). Indeed, the method for perfecting a mechanic’s or mate-rialman’s hen is unlike that for perfecting a judgment hen. See Ala.Code 1975, §§ 6-9-211 and 35-11-210. To equate the two types of hens would be to contravene the statutes and case law concerning judgment liens. We agree that the foreclosure by First National extinguished John Deere’s hen with regard to that specific piece of property, Parcel 1, at that specific point in time; however, the foreclosure did not extinguish the hen as against any and ah other property belonging to Jerry Don Houser. See Ala.Code 1975, § 6-9-211. Except for the injection of a valid bankruptcy discharge, the hen would continue as to any other property that might be later acquired by the Housers. See Aetna Auto Finance, Inc., 240 Ala. 228, 198 So. 356.
Because it appears that there is a factual issue concerning the claim of John Deere, the summary judgment was improper. Accordingly, based on the foregoing, the judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
CRAWLEY, J., concurs.
YATES, J., concurs in the result only.
ROBERTSON, P.J., and MONROE, J., dissent.