[Bell v. Anniston Hardware Co.]


# Bell *v.* Anniston Hardware Co

*Contest of Claim of Homestead Exemption.*

```
114  341
d131 345
```

1. *Homestead exemption; not available when right acquired after lien of attachment has attached.*—Where an attachment is levied on a house before the owner thereof has ever occupied it as a homestead, the lien of the levy of the attachment is superior to any homestead right thereafter acquired.

2. *Same; how determined; occupancy of a room over storehouse does not make the building a homestead.*—Whether a house and lot constitute a homestead depends upon the character of the building and the uses to which it is adapted and to which it is devoted; and a building consisting of one and a half stories, the first used solely for mercantile business, and the half story divided into four rooms, which could be used as sleeping apartments, cannot be claimed as a homestead, even though the owner thereof may have slept in one of the rooms in the upper story.

APPEAL from the Circuit Court of Cleburne.

Tried before the Hon. GEORGE E. BREWER.

The facts of the case are sufficiently stated in the opinion.

AIKEN & BURTON, for appellant.—The entire lot including the storehouse thereon was exempt as a homestead, under the facts disclosed in the abstract.—*Semmes v. Wheatley*, 7 So. Rep. (Miss.) 430; *Turner v. Turner*, 107 Ala. 465; *Smith v. Stewart*, 13 Nev. 65; Smythe on Homestead Exemptions, §§ 75-85; *Garrett v. Jones*, 95 Ala. 96; Thompson on Homestead, § 120.

MERRILL & BRIDGES and BLACKWELL & KEITH, *contra.* The appellant in this case undertook to acquire and claim a homestead exemption in a storehouse by moving into it after an attachment had been, or was being levied on the property. He did not occupy or attempt to occupy the dwelling house situated on the premises, but undertook to run into the upstairs of the storehouse. The dwelling was already occupied and so continued till about January 1, 1893, by the family of Billy Bell. No claim of homestead had been filed in the office of the

probate judge. It is, therefore, clear under the evidence that the court properly gave the charge which is complained of as being erroneous.—*Garrett v. Jones,* 95 Ala. 96; *Turner v. Turner,* 107 Ala. 465; *Jaffrey v. McGough,* 88 Ala. 648.

COLEMAN, J.—The appellee sued out an attachment against the partnership of Bell & Barker and the members composing the firm, which was levied upon certain property, to which the defendant, Bell, interposed a claim of homestead of exemption. This claim was regularly contested, and at the close of the evidence the court instructed the jury, if they believed the evidence, to find the issue for the plaintiff. The case was appealed, and the giving of the affirmative charge for plaintiff is assigned as error.

There is very little material conflict in the evidence. On the 10th of November, 1892, the attachment issued and was levied by the sheriff on the next day on "one store-house and lot at Bell's Mills now occupied by Bell & Barker, and one dwelling house and lot at Bell's Mills now occupied by Billy Bell, as the property of W. J. Bell." This is the property claimed as a homestead. Its value was less than two thousand dollars. The storehouse and dwelling were on a plat of land embracing about two acres, and the houses were not separated by any road or partition of any kind. The storehouse consisted of one story and a half story. The lower story was used solely for mercantile business, and the half story was divided into four rooms with one window at each end of the building. The defendant had been engaged in merchandising alone in the lower story, and continued to do so until the formation of a partnership with Barker. During the time that Bell resided at Bell's Mills, he slept in one of the upper rooms of the storehouse, but took his meals elsewhere. After he left, the room was occupied as a sleeping room by the clerk of the firm. In December, 1891, Bell & Barker established a branch store at Arbacoochee, a place about five miles from Bell's Mills, and the appellant moved there to attend to that branch of the partnership business. He married in June, 1892, and he and his wife continued to reside there until the 10th day of November, the day of the issuance of the attachment. The evidence shows

[Griffin v. Ogletree.]

that on that day, he moved a part of his furniture to Bell's Mills, and both he and his wife, went to Bell's Mills the evening of the 10th of November. Neither he nor his wife entered a room of the storehouse until the morning of the 11th, nor did they place their furniture in either of the rooms of the storehouse until the morning of the 11th of November, 1892. The sheriff testified that he levied upon the stock of goods and the storehouse and dwelling, about 9 o'clock A. M. of the morning of the 11th of November; that he remained there two days and slept in one of the upper rooms at night, and that he did not see and did not know that Mr. Bell or his wife were in either of the rooms while he was there, although he says she might have been in one of the rooms during that time without his knowing it. It is not controverted, that Billy Bell had been occupying the dwelling house for the year and continued to do so until the end of the year. When he left, W. J. Bell and family moved from the room of the storehouse into the dwelling house. W. J. Bell had never occupied the dwelling house prior to that time. This is a substantial statement of the evidence of the claimant of the homestead. The lien of the levy of the attachment, had attached to the dwelling, long before any homestead rights or interest could arise. As to the storehouse, conceding that claimant's wife entered one of the rooms on the morning of the 11th before the levy of the attachment, the facts bring the case within the influence of the decisions of this court, rendered in the cases of *Turner v. Turner*, 107 Ala. 465; *Garrett v. Jones*, 95 Ala. 96.

The plaintiff was entitled to the affirmative charge. Affirmed.